## RUCKSTELL SALES & MFG. CO. v. PERFECTO GEAR DIFFERENTIAL CO.

(Circuit Court of Appeals, Ninth Circuit. August 2, 1926.)

No. 4780.

**Injunction ⬅135—Where issues are complex, and defense not clearly without merit, denial of preliminary injunction is discretionary.**

Where the issues in a suit relate to a complex mechanism, to determine which the court should have expert testimony, tested by cross-examination, and the defense does not clearly appear to be without merit, it is not an abuse of discretion to deny a preliminary injunction.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California. Adolphus F. St. Sure, Judge.

Suit in equity by the Ruckstell Sales & Manufacturing Company against the Perfecto Gear Differential Company. From an order denying a preliminary injunction, complainant appeals. Affirmed.

This is an appeal from an order refusing a preliminary injunction. The substance of the complaint is as follows:

Plaintiff manufactures and sells exclusively a certain new device, for use exclusively in Ford automobiles, particularly a device for use in connection with the rear axle, to produce a planetary reduction gearing, having for its object increase in range of operation and speeds of a Ford car, without changing or affecting the regular Ford planetary transmission. The Ford automobile has but two speeds forward and one reverse. By plaintiff's device a Ford is given four speeds forward and two reverse. On August 1, 1922, plaintiff and defendant entered into a contract reciting that the Perfecto Gear Company owns five certain patents, each of which relates to a multiple speed axle comprising a combined speed change and differential gear mechanism, embodied within the rear axle housing or wheels of a motor-driven vehicle; it being understood that the terms "axle," "two-speed axle," "change speed axle," and "multiple speed axle," as used in the contract, refer to and embrace an axle com-

prising "said features and so characterized, and also refer to and embrace a complete unit or device, relating to a multiple speed axle, and comprising said features and so characterized, and also refer to and embrace any device embodying the inventions or any of them disclosed in or patented in and by said letters patent or any of them."

The Perfecto Company grants to the Ruckstell Company for 15 years a license to make and sell devices embodying the inventions, or any of them, disclosed in the said letters patent and pending applications, and embodying any improvements on said several inventions, or any of them, and which improvements the Perfecto Company may own during the life of the license; but the Perfecto Company "does not hereby or otherwise grant to the second party any license or right in respect to any transmission or speed change, or other mechanism owned or controlled by the first party during the life of this license other than those comprising the features and characterized as described on page 1 of this agreement." The license to make and sell was exclusive "in respect to two speed axles embodying said inventions or any of them" and was exclusive "in respect to axles of more than two speeds made and adapted for use in Ford automobiles or other vehicles * * * manufactured and sold by Ford, but in respect to any axles of more than two speeds made and adapted for use in all other vehicles and in vehicles of all other manufactures," the said license, unless modified as provided, shall be exclusive to the Ruckstell Company only until January 1, 1925. The agreement provided for certain royalties and accounts. The Ruckstell Company was not to deal in any other device of like nature capable of being sold in competition with the axles referred to in the contract. The Ruckstell Company was to have the right under certain restrictions to grant sublicenses to others to make and sell axles embodying the "said inventions."

The complaint alleges that, when the license agreement was made, plaintiff owned certain valuable patents for planetary change speed devices and improvements on the patent of defendant mentioned in the contract, and that it was the intent of the parties to the contract to give to the plaintiff exclusive right of manufacture and sale under all of the patents, and any and all of the improvements of defendant relating to a unit or device involving "the planetary principle of speed change capable of being easily and readily incorporated in or attached to the rear axle of a Ford automobile to convert said axle into a two-speed axle and whereby the two forward speeds doubled." Plaintiff alleges that it enjoyed a complete monopoly in the field of equipping Ford cars with planetary devices producing four forward and two reverse speeds until defendant manufactured and sold two-speed planetary devices for Ford axles and put them on the market as "Planator gear shift," and advertised them as four forward speeds for Fords, and represented that the Planator is an improvement on the Ruckstell axles, all to plaintiff's irreparable damage; that defendant has applied for and acquired patents upon the alleged improvements relating to two-speed axles to which plaintiff is entitled under the contract.

For a second cause of action plaintiff alleges that defendant, through the Planator Gear Shift Company, since July 1, 1925, has manufactured the so-called Planator gear shift in competition with plaintiff at cut-rate prices, and has created a form of unfair competition which threatens to destroy the future business in Ruckstell axles; that defendant has made misrepresentations concerning the Planator gear shift, has induced agents to violate their contracts to cut prices, misled purchasers, and acted fraudulently as to plaintiff in advertising and representations.

The prayer of the complaint is for specific performance, cancellation of license, accounting, damages, and injunction. In support of its motion for injunction, plaintiff filed an affidavit of an experienced mechanical engineer to the effect that the difference between the Planator and Ruckstell devices is not in principle, but in design, and that the Planator unit is a complete device, comprising the same features and characteristics as the Ruckstell device.

The defendant moved to dismiss the complaint, and filed counter affidavits, emphasizing that all the patents referred to in the license agreement of August 1, 1922, and subsequent patents included within the terms of the license, relate to a speed change mechanism of the planetary type combined with a differential gear mechanism, all embodied within the rear axle housing of a motor-driven vehicle; that such types are specially intended for use as auxiliary speed changes on Ford cars, and are so formed that they may be substituted for Ford rear axle parts, so that, by the combination with

e regular Ford transmission, four forward speeds and two reverse speeds are available.

One of the affiants explains in detail, not now necessary to be set forth, that a differential gear mechanism is used between the two halves of the driving axle of an automobile, to permit the rotating effort of the motor to be properly applied to the rear wheels when rounding a curve, and that in each of the structures covered by the patents referred to in the license agreement the structure is a combined speed change and differential gear mechanism of planetary type, and arranged in axial alignment with the axle shaft in the rear axle housing, but that the defendant's Planator or gear shift is an auxiliary transmission embodying planetary gears only, and particularly adapted and intended to be inserted in and in alignment with the propeller shaft of a motor-driven vehicle forward of the rear axle housing; that it is not intended for or capable of assembly within the rear axle housing; that the Planator gear shift is not shown or described in the patents included within the license agreement, ''nor is it an improvement on the structure of those patents;'' that the Planator gear shift is in an inventive field, separate and distinct from rear axle mechanisms, such as the Ruckstell axle, made under the patents of the license agreement; that it is different in the organization of the driving mechanism, and differs mechanically, and that the inventions are differently classified in the United States Patent Office.

The District Court denied the motion to dismiss and the motion for preliminary injunction. Two days thereafter appeal from the order refusing preliminary injunction was allowed. No answer was filed before the plaintiff effected its appeal.

Chas. E. Townsend, Wm. A. Loftus, B. M. Kent, and Wm. S. Graham, all of San Francisco, Cal., for appellant.

John H. Miller, A. W. Boyken, Charles S. Evans, and Chas. O. Bruce, all of San Francisco, Cal., and Raymond Ives Blakeslee, of Los Angeles, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The foregoing statement makes it plain that to reach any clear and satisfactory opinion upon the vital points involved would be, upon the record before us, difficult. While the construction of the contract is for the court, the agreement and the patents therein referred to relate to a somewhat complex mechanism and the arrangement thereof, to comprehend which the District Court may well have felt the need of aid by way of testimony of persons skilled in the art, tested by examination and cross-examination. We cannot now say that there clearly appears to be no merit in the defense that the defendant's mechanical device is not included in the patents referred to in the agreement, or in the applications owned by defendant for patents that were pending when the license contract was made, or in patents applied for or acquired since the date of the license agreement, or that defendant's device is not an improvement on the several inventions embodied in the patents under which the license was given to plaintiff.

We do not pass upon the defenses, further than to say that they do not appear to be without substance. We are of opinion that the District Court did not abuse its discretion in refusing to issue preliminary injunction, and we affirm the order appealed from.

Affirmed.